UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

GREGORY JON PISKIEL,                                   Case No. 21-10727-t7

       Debtor.

## OPINION

Before the Court are cross-motions for summary judgment on whether Debtor's survivor benefit from his deceased father's pension plan is available to Debtor's creditors. The chapter 7 trustee argues that the interest is estate property and is not exempt. Debtor asserts that the interest is exempt, but also argues that the plan is a "spendthrift" trust so his interest in the plan is not property of the estate. Not reaching the exemption issue, the Court rules that Debtor's interest in the plan is not estate property. Summary judgment will be entered accordingly.

A.     Facts.[1]

To rule on the cross-motions for summary judgment, the Court finds that these facts are not in genuine dispute:[2]

Debtor's father, Leon Piskiel ("L. Piskiel"), started working for the City of New York in October 1970. During his working years, L. Piskiel made regular contributions to the New York City Employee's Retirement System Plan, a defined-benefit pension plan regulated by the State and City of New York (the "NYCERS Plan" or the "Plan").

The "Summary Plan Description" for the Plan includes the following:

---

[1] The Court takes judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

[2] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.

NYCERS was established by an act of the New York State Legislature in 1920. The system is responsible for the retirement benefits for most employees of the City of New York The head of the retirement system is the Board of Trustees. The Comptroller of the City of New York is the Custodian of the funds of the System, and by delegation of the Board of Trustees, has the power to invest those funds. . . . All persons holding a permanent civil service position in the competitive or labor class are required to become members of NYCERS six months after their date of employment . . .. NYCERS is a defined benefit plan, meaning that a specific benefit is provided at retirement in amounts that are paid either on a fixed-dollar basis or as a percentage of compensation. The retirement system manages the system's invested assets and pays out benefits according to formulas set forth in the New York State and New York City law. This plan consists of both employer and employee contributions. . . . In general, Tier 1 members[3] are governed by the Administrative Code of the City of New York, the New York State Retirement and Social Security Law (RSSL), the Rules of NYCERS and certain other applicable laws.

L. Piskiel retired in July 2001. He elected to receive a smaller monthly payment than he could have gotten, in exchange for a survivor benefit for his son Gregory Piskiel ("Debtor"). L. Piskiel died on February 6, 2013. Debtor applied for and obtained the survivor benefit his father left him under the NYCERS Plan.

On June 10, 2021, Debtor filed this Chapter 7 case. At the time, Debtor was entitled to monthly payments from the Plan of more than $1,110.94.[4] In Debtor's amended schedule B he disclosed his interest in the NYCERS Plan and valued it at $888.94. In his amended schedule C, Debtor claimed that his interest in the Plan was exempt under § 522(b)(3)(C).[5] Trustee objected to the exemption, generating this contested matter.

---

[3] The summary plan description elsewhere defines Tier 1 members as those who became members prior to July 1, 1973. Debtor's father was a tier 1 member.
[4] The exact amount is not in the record. After deducting for, inter alia, federal income taxes, the net paid to Debtor on the petition date was $888.94/month.
[5] All statutory references are to 11 U.S.C. unless otherwise indicated.

On August 31, 2022, Trustee and Debtor filed cross-motions for summary judgment on the Trustee's objection to the exemption. The motions ask the Court to determine whether the NYCERS Plan is available to estate creditors.

B.  Summary Judgment Standards.

It is appropriate for the Court to grant summary judgment if the pleadings, discovery materials, and any affidavits before the Court show there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a), made applicable to contested matters by Fed. R. Bankr. P. 9014. "[A] party seeking summary judgment always bears the initial responsibility of informing the … court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Courts must review the evidentiary materials submitted in support of a motion for summary judgment to ensure that the motion is supported by evidence. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden, then summary judgment must be denied.

C.  The Parties' Arguments.

Section 522(b)(3)(C) exempts:

retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

The Trustee objects to Debtor's claim that his interest in the Plan is exempt under this subsection. The Trustee cites *Clark v. Rameker*, 573 U.S. 122 (2014), which found that the corpus of an Individual Retirement Account (IRA) inherited by a debtor on her mother's death was not a retirement fund within the meaning of § 522(b)(3)(C) and therefore was not exempt. In *Clark,* the Court focused on the "legal characteristics of the account in which the funds are held, asking

whether, as an objective matter, the account is one set aside for the day when an individual stops working." *Id.* at 127. Since the IRA in *Clark* was set aside for the debtor's mother's retirement, not the debtor's, the Supreme Court ruled that it was not exempt in the hands of the daughter. In support of this conclusion, the Supreme Court noted that the tax rules and restrictions for inherited IRAs differ markedly from IRAs created and funded by the retiree. *Id.* at 128. The Supreme Court held that the tax differences make the inherited IRA funds available for immediate use, rather than designed to fund the owner's retirement. *Id.*

The Trustee argues that Debtor's inherited interest in the Plan is comparable to the inherited IRA in *Clark*, should not be considered a retirement fund under § 522(b)(3)(C), and therefore is not exempt.

Debtor makes two arguments in its cross-motion for summary judgment. First, Debtor argues that the Plan is a spendthrift trust, so his interest in it is excluded from property of the estate by § 541(c)(2).

Debtor also argues that, even if the Plan is property of the estate, *Clark* is distinguishable because, inter alia, funds in inherited IRAs can be withdrawn at any time, while Debtor cannot withdraw anything from the NYCERS Plan.

D. <u>Property of the Estate and the § 541(c)(2) Exclusion</u>.

Filing a bankruptcy case creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case," § 541(a)(1). There are exceptions, however, for property described in § 541(b)[6] and (c)(2). Only property of the bankruptcy estate is subject to distribution by the Trustee. § 726(a).

---

[6] Section 541(b) lists ten types of property that do not become property of the estate. One type (listed in § 541(b)(7), is discussed below. The other types do not apply to this case.

Section 541(c) provides:

>   (1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
>     (A) that restricts or conditions transfer of such interest by the debtor;
>   . . . .
>   (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

Under § 541(c)(1)(A), property of a debtor becomes estate property even if the debtor's right to transfer it is restricted or conditioned. However, there is an exception to the general rule if the following conditions are satisfied: (i) the debtor has beneficial interest in a trust, if (ii) there is a restriction on the transfer of the interest, and (iii) the restriction on transfer is enforceable under applicable nonbankruptcy law. § 541(c)(2); *see also In re Wilcox*, 233 F.3d 899, 904 (6th Cir. 2000) ("An inquiry under § 541(c)(2) normally has three parts: First, does the debtor have a beneficial interest in a trust? Second, is there a restriction on the transfer of that interest? Third, is the restriction enforceable under nonbankruptcy law?"). Debtor argues that his interest in the NYCERS Plan comes within this "spendthrift trust" exclusion.

E.   <u>The NYCERS Plan Is a Trust</u>.

The term trust is not defined in the Bankruptcy Code, so the word must be understood in its ordinary public meaning unless the context indicates otherwise. *Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731, 1738 (2020). In interpreting § 541(c)(2), the unanimous court in *Patterson v. Shumate,* 504, U.S. 753, 758 (1992), found that "[t]he natural reading of [§ 541(c)(2)] entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." By referring to a plan as well as a trust, some courts have held that *Patterson* expanded the definition of trust beyond a

literal reading or, at least, focused on the substance of the legal arrangement rather than its label.

In *In re Laher,* 496 F.3d 279, 287 (3rd Cir. 2007), for example, the Third Circuit held:

> The [*Patterson*] Court did not discuss whether the pension plan at issue constituted a "trust" under the terms of § 541(c)(2), and seems to have expanded the type of legal instruments protected by § 541(c)(2) by referring to "any interest in a *plan* or trust." *Id.* at 758 (emphasis added). . . . Thus, *Patterson* does not opine as to the meaning of "trust," but it does employ language that could be interpreted to mean that § 541(c)(2) is not limited to literal trusts or trusts formed explicitly. "Curiously absent from the Supreme Court's decision is any discussion of § 541(c)(2)'s trust requirement. And on occasion the Court seems unaware of the requirement." *In re Barnes,* 264 B.R. 415, 421 (Bankr. E.D. Mich. 2001).

*Id.* at 287. Nevertheless, after reviewing relevant cases and New York Law, the *Laher* court ruled:

> We join these courts in holding that under New York law an employer-mandated retirement plan such as this one[7] constitutes a trust.

*Id.* at 289; *see also Morter v. Farm Credit Servs.,* 937 F.2d 354, 357 (7th Cir. 1991) ("[I]n every decision we could find that addressed the very pointed question whether TIAA is a spendthrift trust under New York law, the answer was a resounding 'yes.'"); *In re Reynolds,* 1989 WL 252636, at *4 (Bankr. W.D. Ark. 1989) ("This Court, as did the New York courts in *Aurora G.* and *Alexandre* and the bankruptcy courts in *Montgomery* and *Braden,* holds that the CREF certificate, because of the language in the New York statute, is a spendthrift trust."); *In re Woodward,* 1988 WL 236354, at *3 (Bankr. W.D. Ky. 1988) ("Under New York law, the provisions of the TIAA–CREF documents effectively restrict the debtor/beneficiary's ability to transfer his interest in the accounts and also preclude the beneficiary's creditors from reaching the funds. This Court finds that the contracts are valid spendthrift trusts for purposes of Section 541(c)(2).").

The NYCERS Plan was formed and operates under the laws of the State of New York. Under New York trust law, four elements must be satisfied to create a valid trust: (1) a designated

---

[7] The trust in *Laher* was an annuity purchased for the debtor from the funds he contributed to a tax-deferred retirement plan.

beneficiary; (2) a designated trustee, who is not the same person as the beneficiary; (3) a clearly identifiable res; and (4) the delivery of the res by the settlor to the trustee with the intent of vesting legal title in the trustee. *Agudas Chasidei Chabad of U.S. v. Gourary,* 833 F.2d 431, 433-34 (2d Cir. 1987); *see also*, *Laher,* 496 F.3d at 288 (quoting *Agudas*); *Brown v. Spohr*, 180 N.Y. 201, 209-10 (1904) (listing the elements and citing cases).

The NYCERS Plan satisfies the elements of a New York trust. First, the Plan has thousands of designated beneficiaries, including L. Piskiel (during his lifetime) and Debtor. Second, the Plan has a designated trustee, i.e., the Board of Trustees. Third, there is a clearly identifiable res for each beneficiary and for the Plan as a whole. For example, shortly after L. Piskiel retired he received a notification from NYCERS that his "initial reserve" was $411,715.74, based on his and his employer's contributions to the Plan. This amount and all similar amounts for the other Plan beneficiaries are held in trust by the Board of Trustees and invested for the benefit of the Plan beneficiaries. Finally, the amounts held by the Plan for the benefit of L. Piskiel (and now Debtor) were delivered by L. Piskiel or his employer to the Plan, to be held in trust until L. Piskiel retired.

The Court therefore concludes that the NYCERS Plan is a trust under New York law. *See also McEnroe v. Comm. Of Internal Rev.*, 2019 WL 3941494, at *1 (T.C.) (summary opinion) (describes NYCERS as a trust within the meaning of 26 U.S.C. § 401); *Borelli v. Sec'y of Treas.*, 343 F. Supp. 2d 249, 252 (S.D.N.Y.) (NYCERS is a qualified trust within the meaning of § 401 of the Internal Revenue Code); *Estate of Rosenberg v. C.I.R.*, 86 T.C. 980, 982 (T.C. 1986) (same).

F.  Debtor Has a Beneficial Interest in the NYCERS Plan.

Upon his father's death in 2013, Debtor qualified for a survivor benefit under the NYCERS Plan. Under the terms of the Plan, Debtor is entitled to receive a monthly payment for the rest of

his life. NYCERS has acknowledged Debtor's right to this survivor's annuity and has been paying him on account of that interest for about ten years.

G.  New York Law Restricts the Transfer of Debtor's Beneficial Interest in the NYCERS Plan.

Section 110 of the New York Retirement and Social Security Law (McKinney 1999) (the "RSSL") states:

> The right of a person to a pension, a pension-providing-for-increased-take-home-pay, an annuity or a retirement allowance, to the return of contributions, the pension, the pension-providing-for-increased-take-home-pay, annuity, or retirement allowance itself, any optional benefit, including any benefit or monies accruing under an optional retirement program pursuant to article eight-B or one hundred twenty-five-A of the education law, any other right accrued or accruing to any person under the provisions of this chapter and the monies in the various funds continued under this chapter:
> 1. Are hereby exempt from any state or municipal tax, except the estate tax, and
> 2. Shall not be subject to execution, garnishment, attachment, or any other process whatsoever, and
> 3. Shall be unassignable, except as in this chapter specifically provided.

The NYCERS Plan is subject to the RSSL. *See, e.g.*, the Summary Plan Description language quoted above ("Tier 1 members are governed by . . . the New York State Retirement and Social Security Law . . . ."); *see also Yovino v. New York City Civil Employees' Retirement System*, 2007 WL 4458179, at *1 (N.Y. Sup. Ct.) (citing several articles of the RSSL, the court held that "[NYCERS] is a public employees' retirement system governed by New York law"); *Campo v. New York City Employees' Ret. Sys.*, 843 F.2d 96, 99 (2d Cir. 1988) (NYCERS is a member of the state pension system under the New York constitution).

H.  The Restriction on Transfer is Enforceable under Applicable Nonbankruptcy Law.

Many spendthrift trusts have the transfer restrictions in the trust agreement or similar instrument. *See, e.g., In re Harline*, 950 F.2d 669, 670 (10th Cir. 1991) ("a beneficial interest in an ordinary spendthrift trust would clearly qualify for the exemption if the state court would hold that creditors could not reach the interest"); and *In re Hoover*, 646 B.R. 488, 502 (Bankr. W.D.

Wash. 2021) (addressing transfer restrictions contained in the trust document). Here, in contrast, the transfer restrictions come from the RSSL, and are enforceable. *See, e.g., In re Wilcox,* 233 F.3d 899, 901 (6th Cir. 2000) (debtor's beneficial interest in a municipal employees' retirement plan was excluded under § 541(c)(2) because the spendthrift terms of the plan were incorporated into the city charter); *In re Silviera,* 186 B.R. 168, 172, n.4 (Bankr. D. Mass. 1995) (a public pension plan that statutorily restricted the alienation of interests held by participants was enforceable under Massachusetts law); *In re Domina,* 274 B.R. 829, 833 (Bankr. N.D. Iowa 2002) (chapter 7 debtor's interest in an Iowa deferred compensation plan was excluded under section 541(c)(2) because it was subject to statutory anti-alienation provisions); *In re Upshaw*, 542 B.R. 619, 624 (Bankr. N.D. Ga. 2015) (same).

Based on the facts and law cited above, the Court concludes that Debtor's interest in the NYCERS Plan comes within the § 541(c)(2) exclusion and did not become part of Debtor's bankruptcy estate when he filed this case.

I.      The § 541(b)(7) Exclusion.

Portions of Debtor's interest in the Plan may also be excluded from the estate by § 541(b)(7), which provides, in part, that the following is not estate property:

Any amount—

  (A) withheld by an employer from the wages of employees for payment as contributions--
    (i) to--
     (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
     (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
     (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
    . . .
    or

> (B) received by an employer from employees for payment as contributions--
>   (i) to--
>     (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
>     (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
>     (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;

§ 541(b)(7)(A)(i)(I) and (B)(i)(I). The meaning of this language is unclear. One interpretation is that the exception "seems intended to protect amounts withheld by employers from employees or paid by employees that are in the employer's hands at the time of filing bankruptcy, prior to remission of the funds to the plan." 5 Collier on Bankruptcy ¶ 541.23[1] (16th ed.); *see also In re Prigge*, 441 B.R. 667, 677 n.5 (Bankr. D. Mont. 2010) (quoting *Collier*); *In re Parks*, 475 B.R. 703, 708 (9th Cir. BAP 2012) (quoting *Prigge* and *Collier*); and *In re Aquino*, 630 B.R. 499, 551 (Bankr. D. Nev. 2021) (same). This "narrow interpretation" limits the exclusion to any small amount of money in transit to the pension plan on the petition date.

Another interpretation is that the exception excludes the entire benefit plan, deferred compensation plan, or annuity from the bankruptcy estate. *See, e.g., Laher*, 496 F.3d at 290 (opining that an annuity held by a debtor who files a bankruptcy case after October 17, 2005 is excluded from the estate); *see also* 5 Collier on Bankruptcy ¶ 541.23[2] ("Section 541(b)(7) seems to have eliminated much of the need for litigation about some portion of the funds held in pension and other welfare-benefit plans, i.e., amounts withheld from wages by employers for, and amount received by employers from employees for payment as, contributions to, enumerated types of employee-benefit plans.") (footnotes omitted). The fact that *Collier* can be cited in support of both this "broad interpretation" and the narrow interpretation of § 541(b)(7) highlights the difficulty in construing the subsection. And, as *Collier* points out, even under the broad interpretation, the

subsection does not address employer contribution to the plans, asset appreciation, or the debtor's right to receive payments from the plans. *Id*.

The confusion is heightened by the "hanging paragraphs" at the end of each of the quoted subparagraphs— "except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2). . . ." *See, e.g., Aquino*, 630 B.R. at 604-610 (citing cases, a lengthy discussion of the hanging paragraph and how it has been interpreted with the rest of § 541(b)(7)).

In view of the conclusion that Debtor's interest in the NYCERS Plan comes within the § 541(c)(2) exclusion, however, the Court will not wade into the thorny thicket of the poorly drafted § 541(b)(7) and determine whether and/or to what extent it might exclude Debtor's interest in the NYCERS Plan from the bankruptcy estate.

J.  The Court Does Not Decide the Exemption Issue.

Because the Court concludes that Debtor's interest in the Plan is not part of the bankruptcy estate, it does not need to, and does not, rule on whether Debtor's claim of exemption under § 522(b)(3)(C) was proper.

CONCLUSION

The Debtor's interest in the NYCERS Plan is excluded from the bankruptcy estate under § 541(c)(2) and is, therefore, outside the Trustee's reach for distribution to creditors. The Court does not decide Debtor's alternative argument that his interest in the NYCERS Plan is exempt under § 522(b)(3)(C).

By separate order the Court will deny the Trustee's motion for summary judgment, and grant Debtor's motion for summary judgment that his interest in the NYCERS Plan is not property of the bankruptcy estate.

 

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: February 10, 2023
Copies to: Counsel of Record